[Cite as *State v. Harvey*, 2010-Ohio-5408.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 5-10-05

     v.

BRIAN K. HARVEY,                  O P I N I O N

     DEFENDANT-APPELLANT.

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2009-CR-00166**

**Judgment Affirmed**

**Date of Decision: November 8, 2010**

APPEARANCES:

    *Andrew R. Schuman* **for Appellant**

    *Mark C. Miller* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Brian Harvey ("Harvey"), appeals the February 16, 2010 judgment of the Common Pleas Court of Hancock County, Ohio, finding him guilty of four counts of gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(4), each a felony of the third degree, and eight counts of rape in violation of R.C. 2907.02(A)(1)(b), each a felony of the first degree and each containing a sexually violent predator specification pursuant to R.C. 2941.148, and sentencing him to an aggregate prison term of 100 years to life.

{¶2} The facts relevant to this appeal are as follows.[1] On August 6, 2009, Harvey's ex-wife met with Detective Tuttle of the Findlay Police Department to discuss a video she had surreptitiously made of Harvey. Mrs. Harvey explained that she and Harvey were divorced. However, during the school year, Harvey watched their two daughters, K.H., who was eleven at the time, and M.H., who was ten at the time, in the early morning hours at her apartment until they left for school because Mrs. Harvey was working. However, during the summer break, Harvey did not watch the girls during the morning. Mrs. Harvey further stated that shortly before contacting Det. Tuttle she saw a text message on K.H.'s phone from

---

[1] These facts are derived from the pre-sentence investigation, the sentencing hearing, the exhibits admitted into evidence for purposes of sentencing, and various other filings contained in the record. During the sentencing hearing, counsel for Harvey objected to a number of statements made by the prosecutor, some of which he maintained were inaccurate representations of the facts but did not object to any of the facts contained in the pre-sentence investigation. None of the prosecutor's statements to which counsel for Harvey objected is contained in this Court's representation of the facts.

Harvey that read, "can't wait to see you in the morning," which she thought was strange because he was not supposed to be there. As a result, Mrs. Harvey set up a camera in her living room to record the interaction between Harvey and the girls.

{¶3} Mrs. Harvey gave the video recording to Det. Tuttle, who then watched it. This video depicted Harvey giving K.H. a long kiss on the lips, squeezing her buttocks over her pants, and then placing his hand inside of her pants and grabbing her buttocks again. The video also showed Harvey using his mouth on K.H.'s breasts and rubbing her vagina.

{¶4} Mrs. Harvey informed Det. Tuttle that her ex-husband was with the children at their gymnastics class and that he was scheduled to keep them overnight. Det. Tuttle, Det. Domme, Sergeant Blunk of the Hancock County Sheriff's Office, and a caseworker from Hancock County Children's Services went to the gymnastics class and asked Harvey to come with them to the police department for an interview. Harvey agreed and went to the police department while the children were taken to the Crimes Against Children Center in Findlay, Ohio, to be interviewed.

{¶5} In her interview, K.H. revealed that Harvey had vaginal intercourse with her on August 4, 2009, during bedtime, and that a similar incident that also involved vaginal intercourse occurred the week prior on July 28 or July 30, 2009. K.H. also stated that Harvey had anal intercourse with her approximately one

month prior. She further told the investigators that Harvey had penetrated her vagina with his fingers on more than one occasion, usually before having vaginal intercourse with her, and that he had put his mouth on her breasts and vagina on prior occasions. She also informed them that she had witnessed her sister, M.H., put her mouth on Harvey's penis.

{¶6} During his interview, Harvey admitted that he had been engaging in inappropriate activities with his daughters since 2008. More specifically, Harvey admitted to touching K.H.'s breasts and rubbing her vagina on more than one occasion, having vaginal intercourse with K.H. on more than one occasion, performing oral sex on K.H. and having her perform oral sex on him, digitally penetrating K.H.'s vagina, and having anal intercourse with K.H. Harvey also admitted to touching M.H.'s breasts and rubbing her vagina and digitally penetrating M.H.'s vagina. In addition, Harvey informed the investigators that he had inappropriate photographs of young girls on his personal computer. At some point in the interview, Harvey consented to a search of his home and accompanied the officers there, where various items including his computers were seized.

{¶7} A few days after the interviews with K.H. and Harvey, Det. Domme interviewed M.H. In this interview, M.H. revealed that Harvey had touched her "private parts" on more than one occasion and that she had used her mouth "a few times on his privates."

{¶8} Harvey's computer hard drives were seized and a number of photographs of his daughters in the nude were discovered. Some of these photographs also depicted his daughters engaged in sexual activity with an unknown adult male. The computer hard drives also contained video files. Two of these videos showed Harvey engaged in sexual activity with one of his daughters on a boat out in the open. There were five other videos where Harvey's daughters were engaged in sexual activity with an unknown adult male. However, in these recordings, the girls refer to this adult male several times as "Daddy." On one video, K.H. is shown performing fellatio on Harvey and tells him, "Daddy, it's choking me," but Harvey has her continue. According to the victims, Harvey often had M.H. photograph the sexual acts between him and K.H., and often times he had the victims watch one another engage in sexual activity with him.

{¶9} On August 11, 2009, Harvey was indicted for the following offenses:

> Count 1: GSI – victim: K.H.– Date of Offense: July 15, 2009-August 6, 2009;
>
> Count 2: GSI – victim: K.H.– Date of Offense: July 15, 2009-August 6, 2009;
>
> Count 3: GSI – victim: K.H.– Date of Offense: July 15, 2009-August 6, 2009;
>
> Count 4: Rape (vaginal intercourse) – victim: K.H. – Date of Offense: August 4, 2009 – Sexually Violent Predator Specification;

Count 5: Rape (vaginal intercourse) – victim: K.H. – Date of Offense: July 28, 2009-July 30, 2009 – Sexually Violent Predator Specification;

Count 6: Rape (vaginal intercourse) – victim: K.H. – Date of Offense: August 6, 2008-August 6, 2009 – Sexually Violent Predator Specification;

Count 7: Rape (oral sex) – victim: K.H. – Date of Offense: August 6, 2008-August 6, 2009 – Sexually Violent Predator Specification;

Count 8: Rape (oral sex) – victim: K.H. – Date of Offense: August 6, 2008-August 6, 2009 – Sexually Violent Predator Specification;

Count 9: Rape (digital penetration) – victim: K.H. – Date of Offense: August 6, 2008-August 6, 2009 – Sexually Violent Predator Specification;

Count 10: Rape (anal penetration) – victim: K.H. – Date of Offense: August 6, 2008-August 6, 2009 – Sexually Violent Predator Specification;

Count 11: GSI – victim: M.H. – Date of Offense: August 6, 2008-August 6, 2009; and

Count 12: Rape (digital penetration) – victim: M.H. – Date of Offense: April 30, 2009-August 6, 2009 – Sexually Violent Predator Specification.

Each count of GSI was charged under R.C. 2907.05(A)(4) and each count of rape was charged under R.C. 2907.02(A)(1)(b) because both victims were under thirteen at the time of the alleged offenses.

{¶10} Initially, Harvey entered pleas of not guilty to each count and eventually entered pleas of not guilty by reason of insanity. Throughout the next

few months, counsel for Harvey filed a number of motions, including motions to suppress Harvey's statements and the evidence seized from the search of his home and a motion to have Harvey's competency to stand trial evaluated. Harvey was found competent to stand trial on January 4, 2010.

{¶11} On January 11, 2010, Harvey withdrew all pending motions, withdrew his previously tendered pleas of not guilty and not guilty by reason of insanity, and entered pleas of guilty on each count and each specification. In exchange, the State agreed not to pursue charges against Harvey for the images and recordings found on his computer hard drives. However, the images and recordings from the computer hard drives were placed on a compact disc, marked State's Exhibit 2, and submitted to the trial court for its review for purposes of sentencing. The court accepted Harvey's guilty pleas and ordered a pre-sentence investigation.

{¶12} On January 25, 2010, Harvey was sentenced on each count as follows:

Counts 1, 2, 3, & 11: Five years; ordered served consecutively to each other;

Counts 4, 5, & 6: Twenty-five years to life; ordered served concurrently to each other and concurrently to Counts 1-3 & 11;

Counts 7, 8, & 9: Twenty-five years to life; ordered served concurrently to each other but consecutively to Counts 1-6 & 11;

Count 10:     Twenty-five years to life; ordered served consecutively to Counts 1-9 & 11; and

Count 12:     Twenty-five years to life; ordered served consecutively to Counts 1-11.

The trial court noted that its specific intention was that Harvey be sentenced to an aggregate sentence of 100 years to life in prison.

{¶13} This appeal followed, and Harvey now asserts eight assignments of error.

**ASSIGNMENT OF ERROR I**

**HARVEY RECEIVED PREJUDICIALLY INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HIS RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT FAILED TO MERGE THE CONVICTIONS PURSUANT TO R.C. 2941.25 AND ERRONEOUSLY IMPOSED A SENTENCE FOR EACH CONVICTION, WHEN IT SHOULD HAVE IMPOSED ONE SENTENCE FOR THE MOST SERIOUS OFFENSE, RAPE.**

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ERRED IN IMPOSING *ANY* PRISON TERM FOR THE GROSS SEXUAL IMPOSITION CONVICTIONS BECAUSE IT DID NOT MAKE THE FINDINGS REQUIRED BY R.C. 2907.05(C)(2).**

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN IMPOSING PRISON SENTENCES ON ANY OF THE CONVICTIONS BECAUSE IT FAILED TO COMPLY WITH THE REQUIREMENTS OF R.C. 2929.19(B)(3).**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED IN IMPOSING MAXIMUM SENTENCES FOR THE GROSS SEXUAL IMPOSITION CONVICTIONS, IN VIOLATION OF R.C. 2929.14.**

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED IN IMPOSING MAXIMUM SENTENCES FOR THE GROSS SEXUAL IMPOSITION CONVICTIONS BECAUSE IT DID NOT STATE ITS REASONING FOR DOING SO AS REQUIRED BY R.C. 2929.19(B)(2) AND (B)(2)(d).**

## ASSIGNMENT OF ERROR VII

**THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES BECAUSE IT FAILED TO MAKE THE FINDINGS REQUIRED BY R.C. 2929.14(E)(4).**

## ASSIGNMENT OF ERROR VIII

**THE TRIAL COURT ERRED IN IMPOSING AN AGGREGATE SENTENCE OF 100 YEARS TO LIFE IN PRISON, WHICH SENTENCE IS DISPROPORTIONATE IN COMPARISON WITH OTHER SENTENCES IMPOSED FOR SIMILAR OFFENSES.**

*First and Second Assignments of Error*

{¶14} Harvey's first two assignments of error involve whether his offenses constituted allied offenses of similar import, which should have been merged. As such, we elect to address these assignments of error together.

{¶15} In his first assignment of error, Harvey contends that he received ineffective assistance of counsel when his attorney failed to request that his counts be merged and that he be sentenced to one sentence rather than twelve individual sentences. In his second assignment of error, Harvey contends that the trial court erred in not merging all of his offenses and imposing only one sentence for rape.

{¶16} Initially we note that attorneys licensed by the State of Ohio are presumed to provide competent representation. *State v. Hoffman* (1998), 129 Ohio App.3d 403, 407, 717 N.E.2d 1149. An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In reviewing such a claim, courts are to afford a high level of deference to the performance of trial counsel. *Id*. at 142. Also, in order to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial or in his legal proceedings would have been different. *Id*. at

paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the result. *Id.* at 142.

{¶17} When a defendant maintains that he received ineffective assistance of counsel based upon a claim that his counsel failed to make a motion to the court, he must also show a reasonable probability that the motion would have been successful in order for such failure to rise to the level of ineffective assistance of counsel. See *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52; *State v. Robinson* (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077. Thus, this Court's determination of whether counsel for Harvey was ineffective depends upon whether there was a reasonable probability that a motion to merge the offenses in this case would have been successful.

{¶18} The Revised Code provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). However, when the "defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, * * * the defendant may be convicted of all of them." R.C. 2941.25(B).

{¶19} Determining whether two or more offenses are allied offenses of similar import requires a two-step process. The first step requires the court to compare the elements of the two offenses to determine whether they "correspond to such a degree that the commission of one crime will result in the commission of the other[.]" *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. The second step requires a court to determine whether the crimes were committed separately or with a separate animus. *Id*.

{¶20} As for the first step, all the offenses of rape and the sexually violent predator specifications charged against Harvey were identical in their elements, as were all of the offenses of GSI. Thus, all the counts of rape and the sexually violent predator specifications satisfied the first step of *Blankenship*, as did all the counts of GSI. In addition, the Ohio Supreme Court has held that GSI is a lesser included offense of rape so a defendant may not be convicted of both GSI and rape "when the counts arise out of the same conduct." *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 143, citing *State v. Johnson* (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082, paragraph one of the syllabus. However, this does not mean that Harvey cannot be convicted on all counts as this Court must proceed to the second step. See *State v. Lowd*, 3rd Dist. No. 5-09-16, 2010-Ohio-193.

{¶21} Crimes involving distinct sexual activity, i.e., vaginal intercourse, cunnilingus, and digital penetration, each constitute a separate crime with a separate animus, and they do not constitute allied offenses of similar import. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 435, 613 N.E.2d 225. This Court has previously followed the rationale of *Nicholas*, and applied it to the offense of GSI. See *State v. Austin*, 138 Ohio App.3d 547, 549-550, 2000-Ohio-1728, 741 N.E.2d 927.

{¶22} In *Austin*, the defendant was found guilty of two counts of GSI, one in which the defendant touched the victim's breast with his hand and one in which he kissed the victim's breast with his mouth. *Id.* at 550. This Court found that the record did not demonstrate that these acts occurred "in a single, simultaneous instance; rather [these] acts occurred separately but in close proximity of time during the same extended assault of the victim." *Id.* Thus, we concluded that "these acts were of sufficiently separate character * * * so as to constitute separate crimes that do not constitute allied offenses of similar import. Therefore, the trial court acted properly in not treating these offenses as allied offenses of similar import and sentencing defendant for both." *Id.*

{¶23} At the sentencing hearing in the case sub judice, the prosecutor noted that the charges of GSI that listed K.H. as the victim were based on the video that Mrs. Harvey provided to Det. Tuttle. As previously noted, the video

showed Harvey grabbing K.H.'s buttocks, rubbing her vagina, and using his mouth on her breasts. Similarly to the facts in *Austin*, the record in this case did not demonstrate that these acts occurred in a single, simultaneous instance; rather these acts occurred separately but in close proximity of time during the same extended assault of the victim. Thus, they are not allied offenses of similar import.

{¶24} Further, the fourth GSI charge was committed against M.H. Both M.H. and Harvey informed the detectives that he had touched her breasts and rubbed her vagina. Clearly, a defendant can be convicted for more than one offense if each offense involves a different victim, even though the offenses charged are identical, i.e. two counts of GSI. See *State v. Jones* (1985), 18 Ohio St.3d 116, 117, 480 N.E.2d 408 (holding a defendant may be convicted of two counts of aggravated vehicular homicide when two people are killed as the result of a single instance of a defendant's reckless operation of a motor vehicle); *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48 (holding a defendant who set only one fire that killed six people committed six counts of aggravated arson because defendant knowingly set a fire that created a substantial risk of serious harm or injury to six people). Thus, Count 11, the GSI offense naming M.H. as the victim, was not an allied offense of similar import to the other three counts of GSI naming K.H. as the victim.

{¶25} As to the rape counts, the rape in Count 4 was of K.H. and occurred on August 4, 2009. This is one of the specific dates that K.H. could recall that her father had vaginal intercourse with her. Count 5 was for the rape of K.H. and occurred between July 28, 2009, and July 30, 2009. This was another specific time period that K.H. could recall that her father had vaginal intercourse with her. Count 6 was for the rape of K.H. and occurred between August 6, 2008, and August 6, 2009. Harvey was arrested on August 6, 2009. He admitted having vaginal intercourse with his daughter on multiple occasions beginning approximately a year earlier in 2008. Counts 7 and 8 were for acts of oral sex between K.H. and Harvey from August 6, 2008, until August 6, 2009. Harvey admitted that he performed cunnilingus on K.H. and had her perform fellatio on him. Count 9 was for the rape of K.H. via digital penetration committed during the same one-year time frame as Counts 6-8. Both K.H. and Harvey informed investigators that he penetrated K.H.'s vagina with his fingers. K.H. further stated that Harvey would usually do this before he had vaginal intercourse with her. Count 10 was the anal rape of K.H. committed during the same one-year time frame. Both K.H. and Harvey told the detectives that he had anal intercourse with K.H. during the year that he performed multiple acts of sexual abuse upon K.H. and M.H. Lastly, the rape in Count 12 was based upon the digital penetration of M.H.'s vagina by Harvey during this time, which Harvey also admitted doing.

{¶26} The acts of vaginal intercourse (Counts 4-6), anal intercourse (Count 10), and digital penetration (Counts 9 & 12) each involve distinct sexual activity. Hence, they each constituted a separate crime with a separate animus, and they do not constitute allied offenses of similar import. These acts are also separate and distinct from the acts of fellatio and cunnilingus (Counts 7 & 8). Moreover, the acts of vaginal intercourse occurred on separate dates, each with a separate animus and not simply incidental to one another. In addition, Count 12 was committed against M.H. while the others were committed against K.H. Thus, each of these offenses was separate and distinct. Likewise, the acts of rape were separate and distinct from each of the GSI counts, as the acts of GSI were not simply incidental to the commission of the rapes but were separate acts with a separate animus. Therefore, pursuant to R.C. 2941.25(B), Harvey could be convicted for each of the twelve counts and given separate sentences for each, and the trial court did not err in failing to merge any of these offenses. Accordingly, if Harvey's trial counsel would have raised the issue of merger, there was not a reasonable probability that

he would have been successful.[2]

{¶27} For all of these reasons, the first and second assignments of error are overruled.

*Third Assignment of Error*

{¶28} Harvey next asserts that the trial court erred in sentencing him to prison on any of the four counts of GSI because it did not make any of the necessary findings pursuant to R.C. 2907.05(C)(2). This section states:

**Whoever violates this section is guilty of gross sexual imposition.**

**\* \* \***

**(2) Gross sexual imposition committed in violation of division (A)(4) or (B) of this section is a felony of the third degree. Except as otherwise provided in this division, for gross sexual imposition committed in violation of division (A)(4) or (B) of this section there is a presumption that a prison term shall be imposed for the offense. The court shall impose on an offender convicted of gross sexual imposition in violation of division (A)(4) or (B) of this section a mandatory prison term equal to**

---

[2] We also note that during the plea hearing, counsel for Harvey informed the trial court, in Harvey's presence, that he "devoted a lot of time visiting Mr. Harvey" at the jail, visited and consulted with him over a dozen times, reviewed the indictment, the nature of the allegations, and what the State would have to prove beyond a reasonable doubt, reviewed each motion with Harvey, the ramifications of the motions and several different ways the case could turn depending upon the court's rulings on those motions, the insanity defense and how that would impact the case, and reviewed the conversations he had with the detectives and what his own investigation of the case revealed. As noted, trial counsel filed a number of motions with supporting memorandums on Harvey's behalf: a request for discovery, a request for a bill of particulars, a motion to suppress his statements, a motion to suppress evidence seized from Harvey's home and computers, a motion in limine to prevent the admission of Mrs. Harvey's surreptitious videotape, a motion to bifurcate the charges related to K.H. from those related to M.H., a motion for an in camera inspection of children services' records in this case, a motion to bar the testimony of the caseworker, a motion to suppress the results of the testing of the buccal swabs taken from the defendant, and a motion for a competency evaluation of the defendant. All of these filings and their contents evidence an attorney who was very active on his client's behalf, was addressing every possible issue with the case, was well aware of the factual allegations against Harvey, including Harvey's own admissions, and was providing competent representation.

> **one of the prison terms prescribed in section 2929.14 of the Revised Code for a felony of the third degree if either of the following applies:**
>
> **(a) Evidence other than the testimony of the victim was admitted in the case corroborating the violation;**
>
> **(b) The offender previously was convicted of or pleaded guilty to a violation of this section, rape, the former offense of felonious sexual penetration, or sexual battery, and the victim of the previous offense was less than thirteen years of age.**

R.C. 2907.05(C)(2). Harvey contends that the trial court could not sentence him to prison for his GSI charges unless either sub-section (a) or (b) applied. He further contends that no evidence was presented to support a finding that one of these sub-sections applied and that the trial court, consequently, did not make the required finding before sentencing him to a term of imprisonment. We disagree with Harvey's interpretation of R.C. 2907.05(C)(2) and what the trial court was required to find before imposing a prison term in this instance.

{¶29} Harvey was convicted of four counts of GSI in violation of R.C. 2907.05(A)(4). Division (C) specifically states that a violation of division (A)(4) carries a presumption that a *prison term* shall be imposed. Therefore, Harvey's contention that *any* prison term for these offenses was prohibited by this statute is baseless. Further, the sub-divisions with which Harvey is concerned require a trial court to impose a *mandatory* prison term within the range proscribed by R.C. 2929.14 if either of those sub-sections applies. In this case, the trial court never

-18-

referenced R.C. 2907.05(C)(2)(a) or (b) and did not impose a *mandatory* prison term for any of these offenses. The trial court merely exercised the discretion afforded to it by R.C. 2929.14(A)(3) in imposing a five-year-prison term for each of these four counts and in accordance with the presumption that a prison term must be imposed for violations of R.C. 2907.05(A)(4). Thus, Harvey's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶30} Harvey contends in his fourth assignment of error that the trial court erred in sentencing Harvey to a term of imprisonment for his rape convictions because it failed to follow the requirements of R.C. 2929.19(B)(3). This section of the Revised Code states: "Subject to division (B)(4) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following: (a) Impose a stated prison term and, if the court imposes a mandatory prison term, notify the offender that the prison term is a mandatory prison term[.]" R.C. 2929.19(B)(3). Harvey maintains that the trial court failed to inform him that his sentence was mandatory and that this failure renders his sentence void.[3] We disagree.

---

[3] Other than the statute at issue, Harvey cites no authority nor has this Court found any authority for his position that a failure to use the exact term "mandatory" to inform a defendant that his sentence of twenty-five years to life for a count of rape with a sexually violent predator specification is mandatory renders the sentence void ab initio.

**{¶31}** Although Harvey correctly notes that the trial court did not specifically use the magic word that his sentences for rape were "mandatory," the trial court informed Harvey in other ways that these sentences were mandatory. For example, the court told Harvey, "with respect then to counts four, five, six, seven, eight, nine, ten, and twelve, the Defendant having pled guilty to a charge of rape with a sexual predator specification, the Court is *required* for each of these offenses to impose an indefinite term. With the minimum sentence being 25 years to a maximum sentence of life." (Emphasis added.) (Sent. Hrg., 1/25/10, pp. 31-32.) Later, the trial court told Harvey in regards to Counts 7, 8, and 9 that he "*must* serve a period of 25 years to life[.]" (Emphasis added.) (id. at p. 33.) Eventually the court informed Harvey, "[n]ow based upon this Court's finding, the Defendant is obviously not eligible for any prison program that could possibly shorten his sentence." (id. at pp. 34-35.) Moreover, throughout the sentencing hearing, the court, the prosecutor, counsel for Harvey, and Harvey, himself, during his allocution, spoke in terms that evidenced that all involved knew the rape sentences were mandatory.[4] Although the better practice would be to simply use

---

[4] The trial court also specifically discussed the sentencing possibilities with Harvey during the plea colloquy on January 11, 2010. At that time the trial court informed Harvey that the least amount of time he could possibly serve would be twenty-five years, that he would be subject to a *mandatory* term of twenty-five years, and then explained what a mandatory term of twenty-five years meant: "[w]hat that means is, it's a minimum term that must be served prior to any consideration of release." (Plea Hrg., 1/11/10, pp. 28-29.) The court also informed Harvey that he could serve up to a maximum of 200 years to life for the rape counts, if they were ordered to be served consecutively. Thus, Harvey certainly knew prior to changing his pleas of guilty that his rape sentences would be mandatory.

the exact wording of the statute, in this case we find that the information provided by the trial court and the language it employed throughout the sentencing was sufficient to notify Harvey that his sentences for the eight counts of rape were mandatory. Accordingly, the fourth assignment of error is overruled.

*Fifth, Sixth, and Seventh Assignments of Error*

**{¶32}** In his fifth and sixth assignments of error, Harvey maintains that the trial court erred by ordering that he serve the maximum sentence of five years on each of his counts of GSI without making the findings required by R.C. 2929.14(B) and 2929.19(B)(2). Similarly, in his seventh assignment of error, Harvey maintains that the trial court erred by ordering that a number of his sentences be served consecutively to one another without making the findings required by R.C. 2929.14(E)(4).

**{¶33}** The Ohio Supreme Court has previously held,

**The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms.**

*State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 97. Each section of the Revised Code relied upon by Harvey in these three assignments of error was specifically severed from the sentencing statutes in *Foster*. Therefore,

Harvey's fifth, sixth, and seventh assignments of error are without merit, and, accordingly, each is overruled.

*Eighth Assignment of Error*

{¶34} In Harvey's eighth assignment of error, he asserts that the trial court erred in imposing an aggregate sentence of 100 years to life in prison. In support of this assertion, Harvey cites to two other cases wherein the defendants were convicted of sexual offenses and claims that his sentences were disproportionate to other sentences imposed for similar offenses in other cases.

{¶35} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh*, 3rd Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8, citing *State v. Carter*, 11th Dist. No. 2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh*, 2007-Ohio-5774, at ¶ 8, citing *Carter*, 2004-Ohio-1181, at ¶ 44; R.C. 2953.08(G).[5] Clear and convincing evidence is "[t]he measure or

---

[5] We note that the Supreme Court of Ohio's recent plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008-Ohio-4912, establishes a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing review standard adopted by three dissenting Justices in *Kalish*, we note that the outcome of our decision in this case would be identical under the *Kalish* plurality's two-part test.

degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23.

**{¶36}** As previously noted, in *Foster* the Supreme Court of Ohio found those portions of the felony sentencing statute requiring judicial fact-finding before the imposition of a sentence to be unconstitutional. The Court stated, "[t]rial courts [now] have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id*. at paragraph seven of the syllabus.

**{¶37}** Although the trial court is given full discretion in sentencing pursuant to *Foster*, the trial court must consider the overriding purposes of felony sentencing, which are to protect the public from future crimes by the offender and to punish the offender. R.C. 2929.11(A); *State v. Scott*, 3rd Dist. No. 6-07-17, 2008-Ohio-86, ¶ 49, citing *State v. Foust*, 3rd Dist. No. 3-07-11, 2007-Ohio-5767, ¶ 27. Additionally, "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *

commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶38} Here, each of the four counts of GSI was punishable by one to five years in prison. See R.C. 2907.05(C)(2), 2929.14(A)(3). In addition, Harvey's convictions for rape each contained a specification that he was a sexually violent predator pursuant to R.C. 2941.148. Due to these specifications on the eight counts of rape, the trial court was required to sentence Harvey to "an indefinite prison term consisting of a minimum term of twenty-five years and a maximum term of life imprisonment." R.C. 2971.03(A)(3)(d)(i). Thus, Harvey was facing a possible sentence of 220 years to life.

{¶39} The trial court sentenced Harvey to five years on each count of GSI to be served consecutively to one another for an aggregate term of twenty years. As to Counts 4, 5, and 6, the rape counts based upon the acts of vaginal intercourse Harvey perpetrated upon K.H., the trial court imposed the required sentences of twenty-five years to life. However, he ordered that these three offenses be served concurrently with one another *and* concurrently with the GSI counts. Thus, these seven counts resulted in an aggregate sentence of twenty-five years to life. The trial court also imposed the required sentences of twenty-five years to life for Counts 7, 8, and 9. These offenses were also rapes, two of which

were for the acts of oral sex involving K.H. and one for the digital penetration of K.H. The trial court also ordered these to be served concurrently to one another but consecutively to Counts 1-6 and 11. The court also imposed the required sentence of twenty-five years to life for Count 10, the rape of K.H. by anal penetration, and for Count 12, the rape of M.H. by digital penetration. However, the court ordered that these sentences run consecutively to each other and all other counts, resulting in an aggregate sentence of 100 years to life.

{¶40} Clearly, the trial court grouped similar offenses together for purposes of sentencing and chose to sentence according to each grouping and victim: (1) all GSI counts; (2) vaginal rapes of K.H.; (3) oral and digital rapes of K.H.; (4) anal rape of K.H.; and (5) the digital rape of M.H. In fact, the trial court acknowledged its decision in this regard was based upon the "different forms of conduct, * * * [and] as to count 12, which involves a separate victim, the Court feels obligated to impose a consecutive sentence there because it is necessary to vindicate the rights of another daughter." (Sent. Hrg., 1/25/10, pp. 33-34.) In so doing, the trial court structured a sentence that addressed the purposes and principles of sentencing for the various types of criminal behavior in which Harvey engaged.

**{¶41}** At the sentencing hearing, the trial court noted on the record that it had considered the sentencing statutes and relevant case law. The court also stated,

> **Never in my 21 plus years on the bench have I been forced to witness such graphic and disturbing conduct. The Defendant's manipulation and molestation of his children is unspeakable and foremost unimaginable. I choose today not to detail the Defendant's many transgressions, only to say that what occurred must have been the product of a deeply twisted and disturbed mind.**

(Id. at p. 27.) The court further noted that the defendant, as the father of the victims, had a duty to protect his children from harm, that he betrayed the sacred trust between a parent and child, deprived the children of a normal childhood, and "[i]n all likelihood impair[ed] future relationships by confusing the parent/child relationship and by fostering distrust with adults in general." (id. at p. 28.)

**{¶42}** In explaining why it ordered the four terms of twenty-five years to life imprisonment to be served consecutively, the trial court stated

> **Three reasons support the imposition of consecutive sentences. One is a practical concern. Given the depravity of the Defendant's conduct and the unequivocal danger he poses to children, consecutive sentences would never permit him to be in a position of trust with or to have access to children again. To this point, having read the Defendant's statement in the pre-sentence investigation, and listening today to his allocution, I am again and remain shocked at his attempt to minimize his conduct. I also remain shocked that he has a lack of insight into his very deep sociopathology. I am highly suspicious that rehabilitation would work, because I'm unconvinced that the Defendant truly appreciates the wrongfulness of his conduct. * ***

> **\* Secondly, a lengthy sentence would send a signal loud and clear to the community that such horrific conduct will not be tolerated. In fact, the law lists deterrence as an important goal of sentencing. Third and finally, consecutive sentences are necessary in the opinion of this Court, considering the breadth of the Defendant's unlawful conduct, and to rightly acknowledge the devastating impact his conduct had on two separate victims. When considering the imposition of consecutive sentences, the Court must always be confident that the conduct at issue is so egregious that consecutive sentences would not be disproportionate to the harm caused. I'm confident that they would not be out of line. Here the significance of the Defendant's aberrant behavior cannot be understated. Moreover, the Court must also conclude that a lengthy sentence is necessary to protect an unsuspecting public. And I do conclude that.**

(id. at pp. 29-30.)

{¶43} Given the facts previously outlined by this Court, including the numerous video recordings of Harvey and his daughters engaging in sexual acts, the trial court's reasons for imposing consecutive sentences, and the requirements of R.C. 2971.03(A)(3)(d)(i), we do not find by clear and convincing evidence that the trial court's sentence was contrary to law or unsupported by the record. Further, in reviewing a number of other cases involving defendants who were convicted of multiple counts of rape, including those cited by Harvey and the State, we find a range of sentences from forty years to multiple terms of life imprisonment. Also, one of the cases cited by Harvey occurred prior to significant, recent amendments to R.C. 2971.03 and the other case did not involve a sexually violent predator specification. Further, none of the cases cited by either

party involved the video recording of sexual activity between a father and his two biological children, the viewing of sexual activity between a parent and child by the child's sibling, having a younger sibling photograph the sexual acts between parent and child, and the vaginal, anal, digital, and oral rape of a child by her father. Thus, we cannot conclude under these circumstances that Harvey's sentences were disproportionate to other sentences imposed for similar offenses in other cases.

{¶44} In short, each sentence imposed on Harvey was well within the statutory range for sentencing, and eight of these sentences were required by law. Further, the record demonstrated the particularly egregious, systematic sexual abuse perpetrated on the ten and eleven-year-old victims by their father. Therefore, the trial court did not err in imposing an aggregate sentence of 100 years to life upon Harvey, and the eighth assignment of error is overruled.

{¶45} For all of these reasons, we affirm the judgment of the Common Pleas Court of Hancock County, Ohio.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

**WILLAMOWSKI, P.J., Concurring Separately.**

{¶46} I concur fully with the majority opinion, however write separately to emphasize that the appropriate standard of review was applied. The standard of review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellate courts require appellants to meet a clearly and convincingly contrary to law standard of review when reviewing a sentence.[6] For example, if the sentencing court imposed consecutive sentences, as in this case, the standard of review would be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon the proper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C. 2929.12.[7]

{¶47} In his assignments of error, Harvey alleges that the trial court erred by failing to make the findings required by R.C. 2929.14 and 2929.12(B)(2). Harvey's appeal of his felony sentence did not raise issue with the application of the factors set forth in R.C. 2929.12, which would require a review using an abuse of discretion standard. Thus, the clearly and convincingly standard used to review

---

[6] Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.

[7] Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.

Case No. 5-10-05

this case, as set forth in R.C. 2953.08(G)(2) is the proper standard of review herein.