[Cite as *State v. Navarro*, 2025-Ohio-227.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ALEJANDRO S. NAVARRO,

    DEFENDANT-APPELLANT.

CASE NO. 13-23-29

O P I N I O N

Appeal from Seneca County Common Pleas Court
Trial Court No. 23-CR-0105

**Judgment Affirmed**

**Date of Decision:  January 27, 2025**

APPEARANCES:

    *Brian A. Smith* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Alejandro S. Navarro ("Navarro"), appeals the September 28, 2023 judgment entry of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On May 18, 2023, the Seneca County Grand Jury indicted Navarro on Counts One and Two of rape in violation of R.C. 2907.02(A)(2), (B), both first-degree felonies; and Counts Three and Four of sexual battery in violation of R.C. 2907.03(A)(5), (B), both third-degree felonies. On May 31, 2023, Navarro appeared for arraignment and entered pleas of not guilty.

{¶3} The case proceeded to a jury trial on August 14-15, 2023. On August 15, 2023, the jury found Navarro guilty of all four counts in the indictment.

{¶4} On August 29, 2023, Navarro filed a motion for a new trial, which the State opposed. On September 22, 2023, the trial court denied Navarro's request.

{¶5} On September 27, 2023, the trial court sentenced Navarro to an indefinite mandatory prison term of a minimum of seven (7) years to an indefinite maximum of ten and one-half (10.5) years as to Counts One and Two, respectively.[1] For purposes of sentencing, the trial court merged Counts One and Three, as well as Counts Two and Four. The sentences were ordered to be served consecutively for

---

[1] The trial court filed its judgment entry of sentence on September 28, 2023.

a total indefinite mandatory prison term of fourteen (14) years to an indefinite maximum of seventeen and one-half (17.5) years.

{¶6} On October 30, 2023, Navarro filed his notice of appeal. Navarro raises four assignments of error for our review.

### First Assignment of Error

**Because the jury lost its way and created a manifest miscarriage of justice in convicting Appellant, Appellant's convictions, in case number 2023 CR 0105, were against the manifest weight of the evidence.**

{¶7} In his first assignment of error, Navarro argues that his convictions are against the manifest weight of the evidence. Specifically, Navarro contends that his alibi witnesses were more credible than the State's witnesses. Navarro further contends that the DNA evidence was unreliable and that the jury lost its way by assigning any weight to such evidence.

*Standard of Review*

{¶8} In determining whether a verdict is against the manifest weight of the evidence, a reviewing court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Nonetheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶9} When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶10} As an initial matter, we note that Navarro challenges the weight of the evidence supporting the jury's findings of guilt as to all four counts of the indictment. However, we need not address Navarro's arguments concerning the sexual-battery offenses since the trial court merged those offenses with the rape convictions for sentencing purposes. *See State v. Sheldon*, 2019-Ohio-4123, ¶ 11-12 (3d Dist.). Therefore, we will limit our review to the weight of the evidence regarding Navarro's rape convictions.

{¶11} Navarro was convicted of two counts of rape in violation of R.C. 2907.02(A)(2), which provides, in relevant part, that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). "Sexual conduct" is defined to mean

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

**{¶12}** In this case, the jury heard testimony from the victim, L.C., that she was 14 years old at the time of the sexual assault. L.C. testified that, on April 25, 2021, she was visiting her grandmother's house while her mother was at work. L.C.'s mother and Navarro lived together in the upstairs loft area of the grandmother's house. L.C. testified that she was upstairs—sitting on the bed—watching Navarro play video games. At some point, L.C. fell asleep and awoke to Navarro rubbing her back. L.C. testified that "he kind of, like, asked if it was okay, and I -- I didn't really say anything, but then he turned me over and asked me to touch him." (Aug. 14, 2023 Tr. at 135).

**{¶13}** Navarro had L.C. touch his penis with her right hand. L.C. testified that Navarro then "took my pants off and he was using his mouth to touch me." (*Id.* at 136). When asked to explain where Navarro put his mouth, L.C. responded, "He put his mouth on my vagina and -- and he was using his fingers too." (*Id.*). When asked if Navarro inserted his fingers while using his mouth or at a separate time, L.C. responded, "At a separate time." (*Id.*).

{¶14} L.C. testified that the sexual assault lasted approximately 20 minutes and that she "felt empty and scared and alone." (*Id.* at 138). L.C. further testified that she was afraid to say no or stop Navarro because of a prior domestic-violence incident between Navarro and her mother.

{¶15} In addition to L.C.'s testimony, the jury heard testimony from a sexual assault nurse examiner ("SANE"). The SANE nurse examined L.C. following the sexual assault and collected physical evidence consisting of skin swabs of L.C.'s right hand and external vaginal swabs. The jury also heard testimony from a forensic scientist employed at the Bureau of Criminal Investigation who analyzed the physical evidence. The forensic scientist testified that traditional DNA testing of the skin swab of L.C.'s right hand showed DNA contributions from L.C. and Navarro. The forensic scientist further testified that Y-STR DNA testing of the external vaginal swab revealed the presence of male DNA consistent with Navarro. The DNA report prepared by the forensic scientist was admitted into evidence.

{¶16} L.C.'s mother, M.M., also testified at trial. M.M. testified that she and Navarro had lived together at the grandmother's house. M.M. further testified that she was at work on the day of the sexual assault. When L.C. told M.M. what Navarro had done, M.M. and L.C.'s father took L.C. to the police station and then to the hospital. After L.C. was examined at the hospital, L.C. went home with her father and M.M. went back to the grandmother's house. Navarro was not at the grandmother's house and all of his things were gone. M.M. testified that Navarro

left a note that read, "I love you and your family and I didn't do this." (Aug. 14, 2023 Tr. at 107). On cross-examination, M.M. admitted to not keeping the note. "I didn't want to keep anything from [Navarro] after what he did to my family." (*Id.* at 111).

{¶17} The jury also heard testimony from the police detective who investigated the sexual assault. The police detective testified that he saw the note left by Navarro at the grandmother's house. Specifically, the police detective testified that M.M. showed him the note.

{¶18} On appeal, Navarro argues that his rape convictions are against the manifest weight of the evidence because neither L.C. nor her mother, M.M., gave credible testimony at trial. In particular, Navarro argues that L.C.'s testimony is not believable because she has a motive to falsely accuse him due to his prior domestic-violence conviction involving M.M. As to M.M's testimony, Navarro asserts that her testimony is not credible because she has a prior conviction for falsification.

{¶19} Navarro testified in his own defense at trial. Navarro testified that he and M.M. met in 2015 and began dating in 2016. On December 25, 2019, Navarro and M.M. "were having some disagreements" that culminated in Navarro being charged with domestic violence. (Aug. 15, 2023 Tr. at 234). Navarro testified that he entered a plea of no contest and served seven days in jail.

{¶20} Navarro claimed to have no further contact with M.M. or her children following his domestic-violence conviction. Navarro testified that "after the

-7-

domestic violence, none of them wanted anything to do with me." (*Id.* at 236). Navarro stated that his sole interaction with L.C. following his domestic-violence conviction took place in the summer of 2020 when L.C. and her sister were in a vehicle and L.C. "leaned out of the passenger window and then told me that they were going to get even with me because of me putting hands on their mother." (*Id.* at 237).

{¶21} On cross-examination, Navarro gave inconsistent testimony regarding how long he and M.M. had dated. Navarro initially stated that he and M.M. dated for "[a]bout six years." (Aug. 15, 2023 Tr. at 238). When the prosecutor pointed out that 2016 to 2019 is just three years, Navarro testified that he had no contact with M.M. or her children after 2019. Navarro denied being with L.C. in the upstairs loft area on April 25, 2021. Navarro stated, "I was with my -- my brother and my grandmother and my little brother." (*Id.* at 241).

{¶22} Two alibi witnesses testified for Navarro at trial. Navarro's grandmother testified that Navarro was with her all day on April 25, 2021. Similarly, Navarro's brother, J.N., testified that Navarro was with him all day on April 25, 2021. J.N. further testified that Navarro moved into his home in 2019 "around like Christmas time . . . [b]ecause he had a restraining order on him." (*Id.* at 225).

{¶23} Navarro contends that his alibi witnesses gave credible testimony regarding his whereabouts on April 25, 2021. A review of the record, however,

shows that L.C., M.M., and L.C.'s grandmother all testified that Navarro lived with M.M. and was in the upstairs loft area on April 25, 2021. Moreover, on cross-examination, L.C. was asked if she ever told Navarro that she was going to get even with him for hitting her mother. L.C. responded, "No." (Aug. 14, 2023 Tr. at 144).

{¶24} As to the State's DNA evidence, Navarro argues that such evidence is unreliable and that the jury lost its way by assigning it any weight. Specifically, Navarro argues that the Y-STR DNA testing "is far from conclusive" because it yielded a low frequency of occurrence ("1 in 9,742 male individuals") and "neither [Navarro] nor any of his paternal male relatives can be eliminated as the source of the Y-STR DNA profile." (Appellant's Brief at 11; State's Exhibit 2).

{¶25} In considering the evidence, "the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial." *State v. Erickson*, 2015-Ohio-2086, ¶ 42 (12th Dist.). Indeed, it was well within the province of the jury to find the testimony of the State's witnesses more credible than that of the defense witnesses. *See State v. Rawlins*, 2024-Ohio-1733, ¶ 35 (3d Dist.) (stating that a verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses rather than the defendant's version of events). Moreover, it was within the jury's prerogative to find L.C.'s testimony regarding the sexual assault—as corroborated by the DNA evidence—to be truthful. *See Rawlins* at ¶ 36. Accordingly, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Navarro's two rape

convictions must be reversed and a new trial ordered. Therefore, Navarro's rape convictions are not against the manifest weight of the evidence.

{¶26} Navarro's first assignment of error is overruled.

**Second Assignment of Error**

**The failure of Appellant's trial counsel to object to statements during the State's rebuttal, with regard to the alleged victim's alleged "self-harm" and "hospitalization," constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶27} In his second assignment of error, Navarro argues that he was denied his constitutional right to effective assistance of counsel because his trial counsel failed to object to statements made by the prosecutor during rebuttal closing argument that L.C. "went from a smiley, happy little girl to a girl who's self-harming, requiring counseling and hospitalization." (Aug. 15, 2023 Tr. at 287). Navarro further argues that he was prejudiced by his trial counsel's failure to object because "self-harming" and requiring "hospitalization" were among the last words heard by the jury prior to deliberation.

*Standard of Review*

{¶28} A defendant asserting a claim of ineffective assistance of counsel must establish that (1) his counsel's performance was deficient or unreasonable under the circumstances, and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668,

687 (1984). In order to show counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687.

{¶29} Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶30} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Liles* at ¶ 48, quoting *Bradley* at 142.

*Analysis*

{¶31} During rebuttal closing argument, the prosecutor summarized the testimony of L.C.'s mother as follows:

> You heard from her mother how she became a completely changed girl after this incident. She went from a smiley, happy little girl to a girl who's self-harming, requiring counseling and hospitalization.

-11-

(Aug. 15, 2023 Tr. at 287).

{¶32} On appeal, Navarro argues that his trial counsel should have objected the prosecutor's statements because no evidence was presented to show that L.C. engaged in "self-harming" or required "hospitalization." Navarro further argues that he was prejudiced by his trial counsel's failure to object because, had his trial counsel objected to the statements, the trial court would have instructed the jury to disregard the statements as not being in evidence. According to Navarro, this would have led to him being acquitted of the charges.

{¶33} At trial, L.C.'s mother testified that, prior to the sexual assault, her daughter was a "[l]oving, happy, trusting" teenager, and "now she is just a shell of that." (Aug. 14, 2023 Tr. at 109). The mother further testified that L.C. underwent a psychiatric evaluation "[a]nd they held her there for a few days." (*Id.*). The mother explained that L.C. "had thoughts of suicide." (*Id.*).

{¶34} Based on the mother's testimony, we reject Navarro's contention that there was no evidence of L.C.'s self-harming or if she required hospitalization. Moreover, in the context of closing arguments, "[p]rosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn therefrom." *State v. Richey*, 64 Ohio St.3d 353, 362 (1992). Therefore, even if Navarro's trial counsel had objected to the prosecutor's statements, the objection would not have been successful. Thus, Navarro cannot prevail on a claim of ineffective assistance

of counsel because he is unable to show that his trial counsel's performance was deficient or unreasonable under the circumstances. *See Kole*, 92 Ohio St.3d at 306.

**{¶35}** Navarro's second assignment of error is overruled.

### Third Assignment of Error

**The trial court's denial of Appellant's Motion for New Trial was an abuse of discretion, where the trial court allowed the State's rebuttal witness, [L.C.'s grandmother], to testify over Appellant's objection, despite [the grandmother] disobeying the trial court's order for separation of witnesses, and where Appellant was prejudiced by the admission of [the grandmother]'s testimony.**

**{¶36}** In his third assignment of error, Navarro argues that the trial court abused its discretion by denying his motion for a new trial. Specifically, Navarro contends that he should have been granted a new trial because the "failure to abide by the trial court's order regarding separation of witnesses constituted 'misconduct of a witness for the state'" under Crim.R. 33(A). (Appellant's Brief at 18-19).

### *Standard of Review*

**{¶37}** "The decision of whether to grant a new trial pursuant to Crim.R. 33 rests within the sound discretion of the trial court." *State v. Bradley*, 2018-Ohio-3005, ¶ 6 (3d Dist.). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

### *Analysis*

**{¶38}** Crim.R. 33(A) provides the grounds on which a trial court may grant a defendant a new trial, which include, in relevant part,

> (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
>
> (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state[.]

Crim.R. 33(A)(1), (2). A new trial shall not be granted "unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial." Crim.R. 33(E)(5).

**{¶39}** Here, Navarro argues that the trial court should have granted him a new trial because the State's rebuttal witness, L.C.'s grandmother, remained in the courtroom during the State's case in chief despite the trial court's order for separation of the witnesses. Navarro further argues that he was prevented from having a fair trial because the testimony from L.C.'s grandmother "unfairly bolstered the credibility of the State's other witnesses and led to Navarro's convictions." (Appellant's Brief at 20).

**{¶40}** Evid.R. 615 provides that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Evid.R. 615(A). "The obvious purpose of an order excluding a witness from a courtroom is to prevent a witness from shaping or fabricating his testimony to conform to testimony previously given." *State v. Jones*, 1980 WL 351056, * 8 (4th Dist. July 14, 1980).

**{¶41}** Issues surrounding the separation of witnesses and sanctions for the failure to comply with a separation order are within the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.3d 137, 142 (1990). In order to exclude the testimony of a witness who has violated a separation order, the movant must show, among other things, that the party calling the witness consented to, connived in, procured, or had knowledge of the witness's disobedience. *Id.* Moreover, when a separation order is violated, corrective measures open to the court include "permitting the transgression to reflect upon the witness's credibility." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

**{¶42}** In this case, the record shows that, prior to the State calling its second witness to testify, the following exchange took place:

> THE COURT: We have no witnesses present in the gallery that may be testifying; is that correct?
>
> [Prosecutor]: No, not in my case in chief.
>
> THE COURT: Okay.
>
> [Defense Counsel]: No.

(Aug. 14, 2023 Tr. at 97). Thus, it is unclear from the record whether L.C.'s grandmother was in the courtroom during this exchange.

**{¶43}** On the second day of trial, Navarro moved to exclude L.C.'s grandmother from testifying as a rebuttal witness because she had been in the courtroom during portions of the State's case in chief. The trial court denied

Navarro's motion. In reaching its decision to allow L.C.'s grandmother to testify as a rebuttal witness, the trial court noted that the grandmother was *not* on the State's witness list, *nor* was she in the courtroom during any portion of Navarro's case in chief.

{¶44} Based on the foregoing, we conclude that the trial court did not abuse its discretion by allowing L.C.'s grandmother to testify as a rebuttal witness. Even though L.C.'s grandmother was in the courtroom during portions of the State's case in chief, there is no indication in the record that the State consented to, connived in, procured, or had knowledge of her presence. *See Smith*, 49 Ohio St.3d at 142. Moreover, the record is clear that L.C.'s grandmother was not in the courtroom during any portion of Navarro's case in chief.

{¶45} Furthermore, on cross-examination, L.C.'s grandmother was asked about being in the courtroom during portions of the State's case in chief, and the jury was to consider her credibility accordingly. *See Franklin*, 62 Ohio St.3d at 127. Thus, Navarro was neither prejudiced nor prevented from having a fair trial. Therefore, we conclude that the trial court did not abuse its discretion by denying Navarro's motion for a new trial.

{¶46} Navarro's third assignment of error is overruled.

**Fourth Assignment of Error**

**The trial court's sentence of Appellant was contrary to law, because the trial court erred in failing to merge Counts One and**

**Two for purposes of sentencing, as allied offenses of similar import pursuant to R.C. 2941.25.**

**{¶47}** In his fourth assignment of error, Navarro argues that the trial court erred by failing to merge his rape convictions under Counts One and Two for purposes of sentencing. Navarro asserts that "the alleged oral penetration and alleged digital penetration" are allied offenses of similar import within the meaning R.C. 2941.25. (Appellant's Reply Brief at 7). Navarro requests that his sentences on Counts One and Two be vacated and the matter remanded for resentencing, or, alternatively, that the sentences be modified to be served concurrently.

*Standard of Review*

**{¶48}** "Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo." *State v. Jones*, 2024-Ohio-4538, ¶ 33 (3d Dist.). "'De novo review is independent, without deference to the lower court's decision.'" *Id.*, quoting *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.). "We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25." *State v. Bailey*, 2022-Ohio-4407, ¶ 6.

*Analysis*

**{¶49}** Ohio's allied-offenses statute, R.C. 2941.25, specifies when a defendant may be convicted of multiple counts under the same indictment. The statute provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the

-17-

> indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Thus, R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct. *See State v. Underwood*, 2010-Ohio-1, ¶ 23.

**{¶50}** To determine whether allied offenses should merge for sentencing, we ask: "'''(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?'''" *Bailey*, 2022-Ohio-4407, at ¶ 10, quoting *State v. Earley*, 2015-Ohio-4615, ¶ 12, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 31. An affirmative answer to any of these questions permits separate convictions. *Bailey* at ¶ 10. Moreover, the determination of whether R.C. 2941.25 has been properly applied is a fact-intensive analysis. *Id.* at ¶ 16 ("Application of the law governing the merger of allied offenses is dependent on the specific facts of each case.").

**{¶51}** "Crimes involving distinct sexual activity, i.e., vaginal intercourse, cunnilingus, and digital penetration, each constitute a separate crime with a separate animus, and they do not constitute allied offenses of similar import." *State v. Harvey*, 2010-Ohio-5408, ¶ 21 (3d Dist.), citing *State v. Nicholas*, 66 Ohio St.3d 431, 435 (1993).

{¶52} In this case, the trial court determined that the rape convictions under Counts One and Two did not merge because Navarro committed two separate criminal acts with a separate animus. In particular, the trial court found that Navarro committed "two separate acts, one being digital penetration and one being oral sex performed on the victim in this case." (Sept. 27, 2023 Tr. at 16).

{¶53} Based on our review of the record, we agree with the trial court that Navarro's sexual acts were committed separately. *See Ruff*, 2015-Ohio-995 at ¶ 31 (stating that offenses are not allied when they are dissimilar in import or significance, or when the offenses are committed separately). Accordingly, we conclude that the trial court did not err by failing to merge Navarro's rape convictions under Counts One and Two. Navarro is not being punished twice for the same criminal conduct. Rather, Navarro committed two separate and distinct rape offenses by using two different body parts, involving different types of sexual activity. *See Nicholas*, 66 Ohio St.3d at 435.

{¶54} Navarro's fourth assignment of error is overruled.

{¶55} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

**/hls**