[Cite as *State v. Johnson*, 2012-Ohio-5621.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| STATE OF OHIO | : | Patricia A. Delaney, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 2012 CA 00054 |
| | : | |
| | : | |
| DAVID M. JOHNSON | : | O P I N I O N |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:          Criminal Appeal from Stark County
Court of Common Pleas Case No.
2011 CR 1733

JUDGMENT:          Affirmed

DATE OF JUDGMENT ENTRY:          November 29, 2012

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

JOHN D. FERRERO          ANTHONY KOUKOUTAS
Prosecuting Attorney          116 Cleveland Avenue, N.W.
Stark County, Ohio          808 Courtyard Centre
          Canton, Ohio  44702

BY: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South, Suite 510
Canton, Ohio  44702-1413

*Edwards, J.*

{¶1} Appellant, David Johnson, appeals a judgment of the Stark County Common Pleas Court convicting him of aggravated burglary with a firearm specification (R.C. 2911.11(A)(2)), aggravated robbery with a firearm specification (R.C. 2911.01(A)(1)) and one count of disrupting public services (R.C. 2909.04(A)(1)). Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2} During the morning of April 24, 2007, Allen Hollar let his Sheltie out the back door of his home on 18th Street in Canton. He waited for the dog to "do his business," let the dog in, and then fell asleep in a chair near the back door. He did not lock the door when he returned inside with the dog.

{¶3} Hollar woke up when he felt a gun pointed to the side of his head. He saw two black males in his home wearing hoodies, gloves and ski masks. The man holding the gun to his head was wearing a black ball cap. The man said to Hollar, "We need all your cash or I'm going to blow your head off." He repeated this several times. He then frisked Hollar, finding Hollar's billfold containing about $55.00 in cash, credit cards and his driver's license. The man kept asking Hollar for more money. Hollar ran a limousine service out of his home and was known to be paid in cash.

{¶4} The two men quietly went through the house. A family friend was sleeping in another part of the house and did not wake up. While the dog normally "barks and carries on," he "just kind of laid there and watched what was going on." Tr. 96.

{¶5} Hollar could hear one of the men rummaging through the bedroom closet. The man unplugged the cordless phone in the home and put the handset in his jacket.

The robber also went through a filing cabinet before going upstairs. The man holding the gun to Hollar's head kept threatening Hollar, saying that he knew there was more money. He then flipped the dining room table, stuck Hollar's cell phone in his pocket and said, "We know where you live, I'll be back." They then left through the back door. The men spent 15-20 minutes in the house and left with cash, a watch, a bracelet, a necklace, a pinky ring, Hollar's billfold, and two phones.

{¶6} Hollar watched the men leave by a small path between his garage and the neighbor's garage. The path was surrounded by hedges and a chain link fence. Hollar had a fax machine and a phone disguised as a Cleveland Browns helmet which the robbers had not discovered. He plugged in the fax machine and dialed 911.

{¶7} While searching the path where the men retreated, police found a black ball cap identified by Hollar as the cap the robber holding the gun was wearing. The hat was dry, in new condition and untouched by the elements. Police found wet, fresh spit on the path and the tips of two cigars. Police also found fresh shoe prints.

{¶8} The DNA profile taken from the ball cap and from the spit both came from the same person and, when the profiles were entered into CODIS, they came back with a match to a person named David Johnson. No arrest was made at the time. However, while appellant was incarcerated pending trial on a felonious assault charge in 2011, a search warrant was obtained for his DNA. Appellant's DNA was compared to the items submitted in the 2007 burglary and was found to be a match for the ball cap, the spit and one of the cigarette filters. He also was identified as a possible contributor of DNA found on the second cigarette filter.

{¶9} The case proceeded to jury trial in the Stark County Common Pleas Court. At the time, appellant was serving a fourteen year sentence for felonious assault with a violent offender specification. Following trial, appellant was convicted of all charges. The trial court merged the two firearm specifications and sentenced him to nine years for aggravated burglary, five years for aggravated robbery, three years for the firearm specification and one year for disrupting public services. He was ordered to serve the sentences for aggravated burglary and aggravated robbery consecutively to each other but concurrently with the sentence for disrupting public services. He assigns two errors on appeal:

{¶10} "I. THE JURY'S FINDINGS OF GUILT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} "II. THE TRIAL COURT ERRED BY ORDERING APPELLANT TO SERVE CONSECUTIVE SENTENCES."

I

{¶12} In his first assignment of error, appellant argues his convictions are against the manifest weight and sufficiency of the evidence. He argues no one identified him as one of the robbers inside the home, and the items found in the alley with his DNA are only evidence that he was outside the home.

{¶13} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶14} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶15} The elements of an offense may be established by direct evidence, circumstantial evidence or both. *State v. Durr,* 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is defined as, "'[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts, sought proved. * * * ' ". *State v. Nicely,* 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5th Ed. 1979) 221. Circumstantial and direct evidence are of equal evidentiary value. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991).

{¶16} Appellant was convicted of aggravated burglary in violation of R.C. 2911.11:

{¶17} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or

separately occupied portion of the structure any criminal offense, if any of the following apply:

**{¶18}** "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

**{¶19}** Appellant was convicted of aggravated robbery in violation of R.C. 2911.01:

**{¶20}** "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

**{¶21}** "Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

**{¶22}** Appellant was also convicted of disrupting public services in violation of R.C. 2909.04:

**{¶23}** "(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

**{¶24}** "(1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications[.]"

**{¶25}** Appellant is correct in noting that Hollar was unable to identify appellant as the man who held a gun to his head, and the evidence in this case is circumstantial.

However, Hollar was able to identify the cap found on the secluded path behind his home as the one worn by the man who held the gun to his head. Appellant's DNA was on the hat, which looked new and had not been exposed to the elements as if it had been on the path for a long time. Further, police found fresh spit on the same path which DNA testing revealed to be from appellant. The area was not a public area, and from the DNA evidence collected with the path, coupled with Hollar's testimony as to what occurred in the house and his identification of the hat, the jury could have concluded that appellant and his cohort invaded the home after Hollar left the door unlocked when he let the dog out.

{¶26} In *State v. James*, 5th Dist. No. 11CAA050045, 2012-Ohio-966, this Court upheld a conviction for burglary where the evidence linking the appellant to the crime was his DNA found on a discarded cigarette butt in the driveway, and the condition of the butt indicated that it had been left there recently. Similarly, in the instant case the evidence found in the pathway behind Hollar's home was fresh and the DNA found on the items linked appellant to the crime.

{¶27} The first assignment of error is overruled.

II

{¶28} In his second assignment of error, appellant argues that the court erred in sentencing him consecutively without making the required findings mandated by R.C. 2929.14(C).

{¶29} H.B. No 86 amended subsection (E)(4) of R.C. 2929.14 [now subsection (C)(4)] and subsection (A) of R.C. 2929.41, effective September 30, 2011, which now respectively provide:

**{¶30}** "(C)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶31}** "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶32}** "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶33}** "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶34}** "(A) Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States. Except as provided in division (B)(3) of this section,

a jail term or sentence of imprisonment for misdemeanor shall be served concurrently with a prison term or sentence of imprisonment for felony served in a state or federal correctional institution."

**{¶35}** The State argues that appellant was not entitled to be sentenced pursuant to H.B. 86 because the crime was committed in April of 2007, before the effective date of the bill.   Appellant was sentenced on February 29, 2012, after the September 30, 2011, effective date.

**{¶36}** Contained within H.B. 86 at Section 4 is the specific legislative intent not to make the changes retroactive:

**{¶37}** "The amendments* * *apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section and to a person to whom division (B) of section 1.58(B) of the Revised Code makes the amendments applicable."

**{¶38}** R.C. 1.58(B) provides: "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."

**{¶39}** The State argues that R.C. 1.58(B) does not apply here because House Bill 86 increases the maximum sentence for a first degree felony to eleven years. However, this Court has held that a defendant who committed his crime before the effective date of H.B. 86 but was sentenced after the effective date could not be sentenced to consecutive sentences in the absence of the judicial findings of fact mandated by R.C. 2929.14(C).  *State v. Williams*, 5th Dist. No. 11–CA–115, 2012-Ohio-

3211. We concede that *Williams* was not a case where the duration of the offender's sentence was to be determined under the prior law. However, assuming *arguendo* that H.B.86's requirement, that a court make specific findings prior to consecutive sentencing, applies to the instant case, the judge made enough findings to support imposition of a consecutive sentence.

{¶40} The First District Court of Appeals has observed, "The consecutive-sentence findings required by R.C. 2929.14(C) are not the same as those required by former R.C. 2929.19(B)(2), which provided that the trial court 'shall impose a sentence and shall make a finding that *gives its reasons* for selecting the sentence * * * (c) If it imposes consecutive sentences .'(Emphasis added.) *See State v. Comer,* 99 Ohio St.3d 463, 2003–Ohio–4165, 793 N.E.2d 473, ¶ 14–16. In 2003, the Ohio Supreme Court held that the requirement that a trial court gives its reasons for selecting consecutive sentences was 'separate and distinct from the duty to make the findings, and it imposed an obligation on trial courts to articulate the reasons supporting their findings at the sentencing hearing. *Id.* at ¶ 19–20, 793 N.E.2d 473. The trial court's obligation to "give its reasons" is now gone from the sentencing statutes. Gone with it, we hold, is the requirement that the trial court articulate and justify its findings at the sentencing hearing. A trial court is free to do so, of course. But where, as here, there is no statutory requirement that the trial court articulate its reasons, it does not commit reversible error if it fails to do so, as long as it has made the required findings. *See Phillips,* 1st Dist. No. C–960898, 1997 Ohio App. LEXIS 2615, 1997 WL 330605." *State v. Alexander*, 1st Dist. Nos. C-110828, C-110829, 2012-Ohio-3349, ¶ 18. *Accord, State v. Frasca,* 11th Dist. 2011-T-0108, 2012-Ohio-3746, ¶ 57.

{¶41} The trial court is not required to recite any "magic" or "talismanic" words when imposing consecutive sentences provided it is "clear from the record that the trial court engaged in the appropriate analysis." *State v. Nowlin,* 5th Dist. No. CT2012–0015, 2012-Ohio-4923, ¶70.   An appellate court may only sustain an assignment of error challenging the imposition of consecutive sentences under R.C. 2929.14 if the appellant shows that the judgment was clearly and convincingly contrary to law. R.C. 2953.08(G). *Id.*

{¶42} In the instant case, the court made the following statement from the bench during sentencing:

{¶43} "THE COURT: All right.   The - - unless there's something further, the court would - - of course I've examined the purposes and principles relative to the - - as far as the statues are concerned as to the matters that were involved here.

{¶44} "There's a lengthy record as to criminal activity.   And with the strong likelihood of recidivism in this matter, he has not responded favorable, in the past, to any matters that he has been involved in, and I have to consider the fact that the sentence has to take into consideration that the seriousness of the crime - - crimes, together with the use of the firearm, cannot impose something that's demeaning to the seriousness of the conduct involved.   And we need - - the public, of course, has to be protected in this manner also.

{¶45} "Any sentence imposed would be consecutive sentences, would be consecutive to the prison time or sentence currently being served.   And the - - also as a part of the sentence, there's a five year period of post-release control that will be part of the sentence, and it will - - go into the terms of that subsequently."   Tr. 302-303.

**{¶46}** The court stated that the public needed to be protected, and noted that appellant had a long record and a strong likelihood of recidivism. The court also noted the seriousness of the crimes and the use of a firearm. These findings are sufficient to support consecutive sentences pursuant to R.C. 2929.14(C)(4)(c).

**{¶47}** The second assignment of error is overruled.

**{¶48}** The judgment of the Stark County Common Pleas Court is affirmed.

By: Edwards, J.

Delaney, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/r0912

[Cite as *State v. Johnson*, 2012-Ohio-5621.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DAVID M. JOHNSON | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012 CA 00054 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to assessed to appellant.

_____

_____

_____

JUDGES