**[Cite as *State v. Jones*, 2024-Ohio-4538.]**

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

      CASE NO. 15-24-01

    PLAINTIFF-APPELLEE,

  v.

DASHAWN JONES,              O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Van Wert County Common Pleas Court**
**Trial Court No. CR-22-06-073**

**Judgment Affirmed**

**Date of Decision:  September 16, 2024**

**APPEARANCES:**

    *Anthony J. Richardson II* **for Appellant**

    *Eva J. Yarger* **and** *Morgan A. Jackson* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Dashawn Jones ("Jones"), appeals the January 9, 2024 judgment entry of sentence of the Van Wert County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an incident on February 1, 2022 during which Jones and Brandon Fair ("Fair") entered the victim's residence at gunpoint. The victim, J.M., lived in a "she shed" located on the property of his parents' residence. (Aug 7-8, 2023 Tr., Vol. II, at 186). Seeking drugs and money, Jones and Fair "proceeded to viciously beat and pistol whip [J.M.], zip tied his arms behind his back, and, while searching through all of his belongings," "[t]hey continued to beat [him] and Brandon Fair ended up shooting him, grazing him across the neck." (Aug. 7-8, 2023 Tr., Vol. I, at 114). Jones and Fair then "began to drag [J.M.] outside [of the shed] to force [their way] into the main house," but J.M. "broke free, and began screaming loudly for them to leave," and they left. (*Id.*).

{¶3} On June 30, 2022, the Van Wert County Grand Jury indicted Jones on Count One of complicity to attempted murder in violation of R.C. 2923.03(A)(2), (F), 2923.02(A), and 2903.02(A), a first-degree felony; Count Two of kidnapping in violation of R.C. 2905.01(A)(3), (C)(1), a first-degree felony; Count Three of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony; and Count Four of aggravated burglary in violation of R.C. 2911.11(A)(1),

(B), a first-degree felony. On December 5, 2022, Jones appeared for arraignment and entered pleas of not guilty to the indictment.

{¶4} The case proceeded to a jury trial on August 7-8, 2023. On August 8, 2023, the jury found Jones guilty of the counts alleged in the indictment.

{¶5} On August 21 and November 21, 2023, Jones filed motions for a new trial, respectively. The State filed a memorandum in opposition to Jones's motions for a new trial on December 6, 2023. On December 21, 2023, the trial court denied Jones's motions for a new trial.

{¶6} On January 9, 2024, the trial court sentenced Jones to a minimum term of 6 years to a maximum term of 9 years in prison as to Counts One, Two, and Four, respectively, and to a minimum term of 4 years to a maximum term of 6 years in prison as to Count Three. The trial court ordered Jones to serve the prison terms imposed as to Counts Two, Three, and Four consecutively. The trial court further ordered that Jones serve the prison term imposed as to Count One concurrently to the consecutive-prison terms imposed as to Counts Two, Three, and Four for an aggregate sentence of a minimum term of 16 years to a maximum term of 19 years in prison.

{¶7} Jones filed his notice of appeal on January 17, 2024. He raises five assignments of error for our review.

**First Assignment of Error**

**Was there sufficient competent, credible evidence to support the convictions for kidnapping, felonious assault, aggravated burglary, and complicity in the commission of attempted murder where nothing demonstrated that appellant did the criminal conduct?**

{¶8} In his first assignment of error, Jones argues that his complicity-to-attempted-murder, kidnapping, felonious-assault, and aggravated-burglary convictions are based on insufficient evidence. Specifically, Jones argues that there is insufficient evidence that he was the person who committed the offenses. Jones further challenges the sufficiency of the evidence supporting whether he aided and abetted Fair in the attempted murder of J.M. and whether he "acted with purpose to remove J.M. from the place where he was found or to restrain the liberty of J.M. for the purpose of terrorizing or inflicting serious physical harm." (Appellant's Brief at 12).

*Standard of Review*

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

*Analysis*

**{¶10}** Jones was convicted of complicity to attempted murder, kidnapping, felonious assault, and aggravated burglary. R.C. 2923.03 sets forth the offense of complicity and provides, in its relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). R.C. 2923.02, Ohio's attempt-crime statute, provides, in its relevant part, that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). Ohio's murder statute, R.C. 2903.02, provides, in its relevant part, that "[n]o person shall purposely cause the death of another . . . ." R.C. 2903.02(A).

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

R.C. 2901.22(A).

**{¶11}** R.C. 2905.01 sets forth the offense of kidnapping and provides, in its relevant part, that "[n]o person, by force, threat, or deception . . . shall remove another from the place where the other person is found or restrain the liberty of the other person . . . [t]o terrorize, or to inflict serious physical harm on the victim or another." R.C. 2905.01(A)(3). Further, Jones was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides, in its relevant part, that "[n]o person shall knowingly . . . [c]ause serious physical harm to another" and aggravated burglary in violation of R.C. 2911.11(A)(1), which provides, in its relevant part, that

> no person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if . . . [t]he offender inflicts, or attempts or threatens to inflict physical harm on another.

**{¶12}** Generally, Jones does not dispute the evidence concerning the underlying elements of the offenses of which he was convicted; rather, he disputes the issue of identity as to the convictions. Thus, we will begin by addressing the identity element of the offenses. *State v. Missler*, 2015-Ohio-1076, ¶ 13 (3d Dist.). "'It is well settled that in order to support a conviction, the evidence must establish

-6-

beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *Id.*, quoting *State v. Johnson*, 2014-Ohio-1226, ¶ 27 (7th Dist.).

{¶13} In support of his sufficiency-of-the-evidence challenge, Jones argues that a rational trier of fact could not have found that he was the person who committed the crimes at issue in this case. Specifically, Jones contends that the State did not present sufficient evidence that he was complicit to attempted murder, kidnapping, felonious assault, or aggravated burglary because J.M. "could not identify [him] as the second man during the altercation." (Appellant's Brief at 11). Even though J.M. could not identify Jones, the State presented an abundance of circumstantial evidence tying Jones to the crime scene.

{¶14} Indeed, notwithstanding Jones's argument that his convictions are based on insufficient evidence because J.M. could not identify him as the person who committed the crimes at issue in this case, "[t]here is no requirement that a defendant be specifically identified as the perpetrator of a crime by a witness testifying in court to uphold his conviction for that crime." *State v. Littlejohn*, 2015-Ohio-875, ¶ 37 (8th Dist.). Rather, "'direct or circumstantial evidence is sufficient to establish the identity of a defendant as the person who committed a crime.'" *Missler* at ¶ 13, quoting *State v. Collins*, 2013-Ohio-488, ¶ 19 (8th Dist.). "'Circumstantial evidence' is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning or other facts.'" *State v. Lawwill*, 2008-

Ohio-3592, ¶ 12 (12th Dist.), quoting *State v. Wells*, 2007-Ohio-1362, ¶ 11 (12th Dist.). Circumstantial evidence has no less probative value than direct evidence. *State v. Griesheimer*, 2007-Ohio-837, ¶ 26 (10th Dist.). *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.").

{¶15} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that Jones was the person who committed complicity to attempted murder, kidnapping, felonious assault, and aggravated burglary. At trial, J.M. testified that he knew Fair but that he had not seen him for nine to ten years prior to the incident "and then a week before the incident [Fair] had messaged [J.M.] and wanted to come over basically." (Aug. 7-8, 2023 Tr., Vol. II, at 187). J.M. told Fair "where [he] lived and that he could come over." (*Id.* at 188). Fair "came over and said he was looking for some stuff and when he came over, he was just acting . . . like he was up to something." (*Id.*).

{¶16} On February 1, 2022, J.M. "heard . . . an aggressive knock on the door" and "[a]s soon as [he] walked up to the door, that's when [Fair] entered cause he could see [him] through the glass door and pointed a pistol at [him]." (*Id.* at 189-190). Fair accused J.M. of "snitch[ing] on him" and demanded money. (*Id.* at 191). When J.M. did not comply with his demand, Fair motioned for "somebody to come help him." (*Id.* at 192). J.M. testified that, when that person entered the shed, he

was only able to see "him for a second and then he put his hood on and tightened the strings on it so [he] couldn't really see his face." (*Id.* at 192-193). According to J.M., the second man "started hitting [him] as many times as he could and [J.M.] was unconscious." (*Id.* at 194). He testified that, "when [he] came to, the other person . . . was zip-tying [him] behind [his] back . . . ." (*Id.* at 195). J.M. described that person as shorter and slimmer than Fair.

{¶17} Detective Nathan Huebner ("Detective Huebner") of the Van Wert County Sheriff's Office testified that he searched the shed following the altercation and discovered a "little piece of a blue rubber glove." (Aug. 7-8, 2023 Tr., Vol. I, at 139). (*See also* State's Ex. 35). Likewise Detective Sergeant Kyle Fittro ("Detective Sergeant Fittro") of the Van Wert County Sheriff's Office testified that the piece of the blue rubber glove "looked like it did not belong in this scene" because "[i]t was in the presence and surrounded by . . . blood . . . where this incident occurred . . . ." (Aug. 7-8, 2023 Tr., Vol. II, at 275).

{¶18} Because DNA was discovered on the piece of the blue rubber glove, it was submitted to the Ohio Bureau of Criminal Investigation ("BCI") for analysis. Logan Schepeler ("Schepeler"), a forensic scientist in the DNA section of BCI, testified that he analyzed the DNA discovered on the piece of the blue rubber glove. According to Schepeler, the DNA from the piece of the blue rubber glove matched Jones's DNA profile, which was in the Combined DNA Indexing System ("CODIS"). Importantly, Schepeler testified that a *full* DNA profile was discovered

on the piece of the blue rubber glove and that "there was one male present on the sample." (Aug. 7-8, 2023 Tr., Vol. III, at 322).

**{¶19}** Schepeler testified that he requested law enforcement to provide a DNA sample from Jones for comparison since the DNA discovered on the piece of the blue rubber glove matched Jones's DNA profile. Schepeler testified that he determined that the "comparison" between that "evidence and the DNA standard" (Jones's DNA profile) "were consistent with one another." (*Id.* at 301). He testified that "the estimated frequency of occurrence of [Jones's] DNA profile is rarer than one in one trillion unrelated individuals." (*Id.* at 302). That is, "that means that [he] would expect to test more than one trillion unrelated people to find one person that could match with that DNA from the evidence." (*Id.*).

**{¶20}** Next, Mallory Naftzger ("Naftzger"), an intelligence analyst with the Ohio Narcotics Intelligence Center, testified that she extracted data from Jones's cell phone and provided that data to Detective Sergeant Fittro. (*See* State's Ex. 37). Detective Sergeant Fittro testified that he compared the data extracted from Jones's cell phone with the data extracted from Fair's cell phone and determined that Jones "was a contact in Brandon Fair's Snapchat account." (Aug. 7-8, 2023 Tr., Vol. III, at 362). Importantly, Detective Sergeant Fittro testified that the information extracted from Jones's cell phone was limited because the device's factory settings had been reset between the date of the incident at issue in this case and the day that

the phone was seized. Nonetheless, Detective Sergeant Fittro was able to connect Jones with Fair.

**{¶21}** Furthermore, Officer Dawson Kimmet ("Officer Kimmet"), the officer in command of the Van Wert County Correctional Facility, testified that he confiscated a letter that "Jones was attempting to release [by hiding] it in his discovery packet when releasing it to a loved one" from the correctional facility. (Aug. 7-8, 2023 Tr., Vol. II, at 237). He identified State's Exhibit 41 as a copy of that letter, which he read for the jury. Importantly, Jones states in the letter to the recipient to be cautious about "saying dumb shit over the damn phone" and questioned why she would "say she said [Jones] was there over the phone." (*Id.* at 241). Jones further instructs the recipient to restate in a future phone conversation that he was *not* present at J.M.'s residence on February 1, 2022. Detective Sergeant Fittro identified State's Exhibit 43 as jailhouse phone calls from Jones at the Van Wert County Correctional Facility, which were played for the jury. In those phone calls, Jones can be heard acknowledging that it was his letter that was confiscated by Officer Kimmet.

**{¶22}** Based on the forgoing, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Jones was the person who committed the crimes at issue in this case. The testimony of the State's witnesses along with the scientific evidence establishing that Jones's DNA profile matched the DNA profile discovered on the piece of the blue rubber glove found in the shed is

sufficient to tie Jones to the crime scene and to permit the jury to infer that he was the person who committed complicity to attempted murder, kidnapping, felonious assault, and aggravated burglary.

{¶23} Decisively, "DNA evidence identifying a defendant as a major contributor to the DNA profile found on an object linked to a crime is sufficient evidence to sustain a conviction." *State v. Eckard*, 2016-Ohio-5174, ¶ 33 (3d Dist.), citing *State v. Brown*, 2013-Ohio-2690, ¶ 31, 35 (8th Dist.) (concluding that Brown's convictions were based on sufficient evidence because his DNA profile was the major contributor to the DNA profile discovered on a shirt connected to the crimes even though the DNA profile on the shirt also revealed the DNA of unidentified minor contributors), *State v. Crabtree*, 2010-Ohio-2073, ¶ 17, 19 (9th Dist.) (concluding that a rational trier of fact could have concluded that Crabtree committed the crimes because his DNA was consistent as the major contributor to the DNA profile discovered on a gun that was connected to the crimes), *State v. Bridgeman*, 2011-Ohio-2680, ¶ 16, 18 (2d Dist.) (concluding that a reasonable trier of fact could have concluded that Bridgeman committed the bank robbery because DNA testing of a ski mask and glove connected to the robbery revealed Bridgeman as the major contributor to the DNA profile discovered on the glove and the ski mask), and *State v. Johnson*, 2012-Ohio-5621, ¶ 25 (5th Dist.) (concluding that "the jury could have concluded that [Johnson] and his cohort invaded the home" because Johnson's DNA was discovered on a hat that the victim identified as the hat "worn

by the man who held the gun to his head"). Therefore, we conclude that the State presented sufficient evidence identifying Jones as the person who committed complicity to attempted murder, kidnapping, felonious assault, and aggravated burglary.

**{¶24}** Nevertheless, Jones argues that his complicity-to-attempted-murder and kidnapping convictions are based on insufficient evidence because the State did not present sufficient evidence that he "aided and abetted [Fair] to purposefully cause J.M.'s death" or that he "acted with purpose to remove J.M. from the place where he was found or to restrain the liberty of J.M. for the purpose of terrorizing or inflicting serious physical harm." (Appellant's Brief at 12, 14). Jones's argument is belied by the record.

**{¶25}** "A person who aids and abets a crime, i.e., an accomplice, is treated as a principal offender and may be punished as such for the acts of the other offenders." *State v. Dumas*, 2015-Ohio-2683, ¶ 49 (7th Dist.). "'The accomplice may therefore be charged under the statute defining the principal offense, and the law will impute the elements of the offense committed by the principal actor to the accomplice as an aider and abettor, as if the accomplice had committed those acts.'" *Id.*, quoting *State v. Thompson*, 2011-Ohio-6725, ¶ 10 (10th Dist.).

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the

> defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "'[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *Id.* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.*

{¶26} "'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Conway*, 2006-Ohio-791, ¶ 143, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978). "[A] defendant's intent may be inferred from all the surrounding facts and circumstances of the crime." *State v. McRae*, 2020-Ohio-773, ¶ 11 (1st Dist.). Indeed, "'"in an attempted-murder prosecution, a defendant's specific intent to kill another can be inferred from the defendant's shooting in the victim's direction" and is strongly corroborative of criminal purpose.'" *State v. Smith*, 2023-Ohio-3015, ¶ 24 (3d Dist.), quoting *State v. Dwyer*, 2022-Ohio-490, ¶ 20 (2d Dist.), quoting *State v. MacDonald*, 2019-Ohio-3595, ¶ 17-18 (1st Dist.). That is, "'a gun is considered a "deadly weapon," and therefore its discharge in another's direction supports an inference that the shooter harbored the specific intent to kill.'" *Dwyer* at ¶ 20, quoting *McRae* at ¶ 11. *See also Smith* at ¶ 24 (noting that "'[A] firearm is an

inherently dangerous instrumentality, the use of which is reasonably likely to produce death'"), quoting *State v. Widner*, 69 Ohio St.2d 267, 270 (1982).

**{¶27}** Based on our review of the record, we conclude that the State presented sufficient evidence that Jones aided and abetted Fair in the attempted murder of J.M.—that is, that Jones aided and abetted Fair to attempt to purposefully cause J.M.'s death. Specifically, J.M. testified that Fair motioned for Jones to *assist* him in the incident during which Fair shot J.M. *See State v. Jones*, 2020-Ohio-4915, ¶ 46 (8th Dist.) (asserting that "Ohio courts have consistently held that evidence showing a defendant aided and abetted the shooter is sufficient to support a conviction for attempted murder"). From that evidence, the jury could infer that Fair acted with the requisite purpose to kill. *See McRae* at ¶ 12. In other words, since the State presented evidence that Fair discharged a gun in the direction of J.M., the jury could infer that Fair acted with purpose. Consequently, since the State presented sufficient evidence that Jones was not only intentionally present at the scene but that Jones supported, assisted, or cooperated with Fair in the commission of the criminal conduct, Fair's acts can be imputed to Jones. *See State v. Smith*, 2012-Ohio-794, ¶ 13 (9th Dist.); *State v. Winbush*, 2017-Ohio-696, ¶ 71 (2d Dist.). Therefore, a rational trier of fact could have found beyond a reasonable doubt that Jones was complicit in the attempted murder of J.M.

**{¶28}** Furthermore, the State presented sufficient evidence that Jones purposely restrained the liberty of J.M. for the purpose of terrorizing or inflicting

serious physical harm. "'Restraining an individual's liberty means limiting or restraining their freedom of movement. The restraint need not be for any specific duration or in any specific manner." *State v. Logan*, 2017-Ohio-8932, ¶ 12 (3d Dist.), quoting *State v. Williams*, 2017-Ohio-5598, ¶ 19 (10th Dist.). Here, J.M. testified that Jones zip tied his hands "behind [his] back" during the altercation. (Aug. 7-8, 2023 Tr., Vol. II, at 195). *Compare State v. Elmore*, 2006-Ohio-6207, ¶ 49 (concluding that the State presented sufficient evidence that Elmore kidnapped the victim because he "tied [the victim's] hands"). Further, J.M. testified that Jones continued to assault him after he was restrained. *See State v. Abdullah*, 2022-Ohio-3977, ¶ 40 (11th Dist.) ("Further, the evidence showed that, after preventing her from leaving, Abdullah continued to assault her, demonstrating that she was restrained for the purpose of assaulting and terrorizing her."). Based on that evidence, a rational trier of fact could have found beyond a reasonable doubt that Jones kidnapped J.M.

{¶29} For these reasons, we conclude that Jones's complicity-to-attempted-murder, kidnapping, felonious-assault, and aggravated-burglary convictions are based on sufficient evidence.

{¶30} Jones further argues under his first assignment of error that his convictions are against the manifest weight of the evidence. Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *Thompkins*, 78 Ohio St.3d at 389. However, Jones's manifest-weight-of-the-

evidence argument was not specifically assigned as error for our review as required by App.R. 16(A). Because Jones did not separately assign his argument as required by the Rules of Appellate Procedure, we will not address it. *Accord State v. Bogle*, 2022-Ohio-2946, ¶ 8, fn. 1 (5th Dist.); *State v. Blade*, 2023-Ohio-3054, ¶ 54 (8th Dist.).

**{¶31}** For these reasons, Jones's first assignment of error is overruled.

### Second Assignment of Error

**Did the trial court properly deny merging the convictions and recognize appellant's right against double jeopardy when imposing sentence for complicity to commit attempted murder, kidnapping, felonious assault, and aggravated burglary, where, even accepting the verdict of the jury, the alleged actions were one course of conduct and the convictions were resulting from allied offenses of similar import?**

**{¶32}** In his second assignment of error, Jones argues that the trial court erred by failing to merge his complicity-to-attempted-murder, kidnapping, felonious-assault, and aggravated-burglary convictions. Specifically, Jones contends that his convictions are allied offenses of similar import because "the same acts for which he was alleged to have committed felonious assault, fighting J.M., are the same acts and course of conduct for which he was convicted of complicity to commit attempted murder, aggravated burglary, felonious assault, and kidnapping." (Appellant's Brief at 18).

*Standard of Review*

**{¶33}** Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo. *State v. Stall*, 2011-Ohio-5733, ¶ 15 (3d Dist.). "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

**{¶34}** "The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution prohibit a criminal defendant from being tried twice for the same offense." *State v. Pendleton*, 2020-Ohio-6833, ¶ 8. "This prohibition applies to successive prosecutions as well as to multiple punishments for the same offense." *Id.* "Regarding multiple punishments for the same offense, the Double Jeopardy Clause prohibits 'the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.*, quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

**{¶35}** In Ohio,

R.C. 2941.25 was enacted so that if "'the same conduct by the defendant technically amounts to two or more related offenses, he should be guilty of only one offense,' and conversely, that if 'his conduct amounts to two or more different offenses, or to two or more offenses of the same kind committed at different times or with a separate evil purpose as to each, then it should be possible to convict him of all such crimes.'"

*Id.* at ¶ 9, quoting *State v. Brown*, 2008-Ohio-4569, ¶ 16, quoting Ohio Legislative

Serv. Comm., Proposed Ohio Criminal Code 308 (Mar.1971). Specifically, R.C.

2941.25, Ohio's multiple-count statute, states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶36}** The Supreme Court of Ohio directs us to apply a three-part test to

determine whether a defendant can be convicted of multiple offenses:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 2015-Ohio-995, ¶ 31. *See also State v. Gilmer*, 2024-Ohio-1178, ¶ 87

(6th Dist.) ("If the answer to any of these questions is 'yes,' the defendant may be

convicted and sentenced for multiple offenses."). "The burden is on the defendant

to establish his entitlement to the protection provided by R.C. 2941.25 against

multiple punishments for a single criminal act." *State v. Artis*, 2019-Ohio-2070, ¶ 44 (3d Dist.).

**{¶37}** "As explained in *Ruff*, offenses are of dissimilar import 'when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.'" *State v. Bailey*, 2015-Ohio-2997, ¶ 77 (1st Dist.), quoting *Ruff* at paragraph two of the syllabus. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial . . . will reveal whether the offenses have similar import." *Ruff* at ¶ 26. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.*

**{¶38}** "The term 'animus' means '"purpose or, more properly, immediate motive."'" *State v. Ramey*, 2015-Ohio-5389, ¶ 70 (2d Dist.), quoting *State v. Grissom*, 2014-Ohio-857, ¶ 40 (2d Dist.), quoting *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). "'Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must . . . commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime.'" *Id.*, quoting *Logan* at 131. "'Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances.'" *Id.* at ¶ 71, quoting *Logan* at 131. "'Thus the manner

in which a defendant engages in a course of conduct may indicate distinct purposes.'" *Id.*, quoting *State v. Whipple*, 2012-Ohio-2938, ¶ 38 (1st Dist.). "'Courts should consider what facts appear in the record that "distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed."'" *Id.*, quoting *Whipple* at ¶ 38, quoting *State v. Glenn*, 2012-Ohio-1530, ¶ 9 (8th Dist.).

{¶39} Based on our review of the record, we conclude that the trial court did not err by failing to merge Jones's complicity-to-attempted-murder, kidnapping, felonious-assault, and aggravated-burglary convictions. Primarily, the harm resulting from the aggravated burglary was separate and identifiable from the harm caused by the complicity-to-attempted-murder, felonious-assault, and kidnapping offenses. *See State v. Craig*, 2017-Ohio-4342, ¶ 33-37 (4th Dist.). That is, the harm from the theft-related offense of aggravated burglary was different from the physical harm that resulted from the complicity to attempted murder, felonious assault, and kidnapping. *See id.* at ¶ 37.

{¶40} Not only was the aggravated burglary committed with a dissimilar import, but it was also committed separately and with a separate animus. *See id.* at ¶ 38; *State v. Ortiz*, 2016-Ohio-974, ¶ 31 (6th Dist.). Indeed, the aggravated burglary was complete when Fair and Jones trespassed into the shed by force. *Compare State v. Brooks*, 2016-Ohio-489, ¶ 47 (8th Dist.) (analyzing that "the aggravated robbery was over" after the victim was "confronted by Brooks . . . at

gunpoint, and was robbed of his wallet"); *Ortiz* at ¶ 31 ("As to the aggravated burglary charge, the evidence presented at trial demonstrated that the aggravated burglary was committed when appellant hit M.C. and forcibly pushed his way into the apartment.").

{¶41} The harms that resulted from the complicity to attempted murder, felonious assault, and kidnapping were also separate and identifiable. *See State v. Greer*, 2022-Ohio-3082, ¶ 48-49 (6th Dist.) (concluding that injuries from a gunshot were separate and identifiable from injuries caused by an assault). In other words, the harm that resulted from the felonious assault is a separate harm than the harm that resulted from the gunshot wound, and the injuries that J.M. suffered from the felonious assault and gunshot wounds were not limited to the restraint on his liberty. *See State v. Cromwell*, 2023-Ohio-2173, ¶ 33 (8th Dist.) ("With respect to the felonious assault, the record reflects that K.K. suffered severe injuries that were not limited to the restraint of her liberty.").

{¶42} The record further reflects that the complicity to attempted murder, felonious assault, and kidnapping were also committed separately. *See State v. Clowers*, 2019-Ohio-4629, ¶ 35 (12th Dist.) (concluding that, in addition to suffering "different harms from the offenses," the kidnapping and felonious assault were committed separately). Specifically, once Fair and Jones forced their way inside the shed, Jones assaulted the victim multiple times. Thereafter, Jones separately committed the kidnapping by zip-tying J.M.'s hands behind his back.

After J.M. "broke the zip-ties and [he] had struck [Fair]," Jones "knock[ed him] unconscious again." (Aug. 7-8, 2023 Tr., Vol. II, at 195). When J.M. "woke up again," Fair pistol whipped and shot J.M. (*Id.* at 196).

{¶43} Consequently, we conclude that the trial court did not err by failing to merge Jones's complicity-to-attempted-murder, felonious-assault, kidnapping, or aggravated-burglary convictions.

{¶44} Therefore, Jones's second assignment of error is overruled.

**Third Assignment of Error**

**Should consecutive sentences be imposed where the record does not support that all the findings related to R.C. 2929.14, were supported in the record?**

{¶45} In his third assignment of error, Jones challenges the trial court's order that he serve his sentences consecutively. Specifically, Jones argues that the trial court erred by imposing consecutive sentences in this case "because the consecutive sentences are disproportionate to the seriousness of his conduct, and because R.C. 2929.14(C)(4)(a)-(c) was not satisfied." (Appellant's Brief at 20).

*Standard of Review*

{¶46} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. When reviewing the imposition of consecutive sentences, "[t]he plain language of R.C.

2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶47}** "Except as provided in . . . division (C) of section 2929.14, . . . a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides, in its relevant part, that

> the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no

single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶48}** R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences. *State v. Hites*, 2012-Ohio-1892, ¶ 11 (3d Dist.); *State v. Peddicord*, 2013-Ohio-3398, ¶ 33 (3d Dist.). Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

**{¶49}** The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 2014-Ohio-4140, ¶ 50 (3d Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

**{¶50}** In this case, the trial court made the three statutorily required findings before imposing consecutive sentences at the sentencing hearing and it incorporated

those findings into its sentencing entry. *Accord State v. Robinson*, 2017-Ohio-2703, ¶ 9 (3d Dist.). Specifically, at Jones's sentencing hearing, the trial court found that (1) consecutive sentences were necessary in this case "to protect the public from future crime and also to punish [Jones]"; (2) "the consecutive sentences are not disproportionate in the seriousness of the offender's conduct and to the danger [Jones] poses to the public," and (3)

> at least two of the multiple offenses were committed as part of one or more courses of conduct in the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for new defenses [sic] committed as part of any other courses of conduct that adequately reflects the seriousness to the [Jones's] conduct.

(Jan. 9, 2024 Tr. at 36). *See* R.C. 2929.14(C)(4)(b) The trial court incorporated those findings into its sentencing entry. (*See* Doc. No. 87).

{¶51} Nonetheless, Jones contends that the record does not support the findings that the trial court used to justify the imposition of consecutive sentences. Specifically, Jones argues that the trial court erred by imposing consecutive sentences because the record does not support the trial court's findings that consecutive sentences are not disproportionate to the seriousness of the Jones's conduct and to the danger that he poses to the public *or* that the harm caused by two or more of the multiple offenses was so great and unusual that no single prison term adequately reflects the seriousness of Jones's conduct under R.C. 2929.14(C)(4)(b).

**{¶52}** "While a trial court is not required to state reasons in support of its R.C. 2929.14(C)(4) findings, an appellate court may take action if the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4)." *State v. Mason*, 2020-Ohio-3505, ¶ 13 (3d Dist.). *See also Gwynne*, 2023-Ohio-3851, at ¶ 5. That is, "'our consecutive-sentencing review is limited to determining whether the record supports the findings actually made; it is not an invitation to determine or criticize how well the record supports the findings.'" *State v. Nienberg*, 2017-Ohio-2920, ¶ 19 (3d Dist.), quoting *State v. Jones*, 2016-Ohio-8145, ¶ 16 (8th Dist.).

**{¶53}** Here, the record supports the trial court's finding that consecutive sentences are not disproportionate to the seriousness of Jones's conduct and to the danger that he poses to the public. *See State v. Franklin*, 2019-Ohio-3760, ¶ 33 (8th Dist.). Indeed, the evidence presented at trial reflects that Jones's conduct was very serious and the record further reflects that Jones poses a danger to the public. *See State v. Andrews*, 2021-Ohio-3507, ¶ 16 (6th Dist.). Likewise, the record supports the trial court's finding under R.C. 2929.14(C)(4)(b). Specifically, the record reflects that Jones committed four offenses as part of a course of conduct which resulted in substantial injuries to J.M. *See State v. Wasilewski*, 2020-Ohio-5141, ¶ 50-52 (11th Dist.). Moreover, the record supports the trial court's finding that the harm caused by Jones was so great or unusual to merit consecutive sentences. *See*

*State v. Rogan*, 2024-Ohio-1334, ¶ 38 (3d Dist.). Importantly, the victim detailed the extent of his injuries at trial.

**{¶54}** For these reasons, we conclude that the record reflects that the trial court made the appropriate R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry and that those findings are not clearly and convincingly unsupported by the record. *State v. Case*, 2023-Ohio-4365, ¶ 17 (3d Dist.).

**{¶55}** Jones's third assignment of error is overruled.

### Fourth Assignment of Error

**Was appellant afforded effective assistance of counsel where, despite his cries for fairness, neither of his counsel raised a concern or developed a case to fully preserve the issue and argue that there was a prima facie violation of the fair cross-section requirement when Van Wert County had only White American individuals in its jury pool?**

**{¶56}** In his fourth assignment of error, Jones argues that his trial counsel was ineffective for failing to object to the jury pool. Specifically, Jones asserts that his "trial counsel failed to adequately present or preserve the constitutional issue of whether the trial court complied with the fair cross-section requirement of the Sixth Amendment to the U.S. Constitution." (Appellant's Brief at 24).

### *Standard of Review*

**{¶57}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the

circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶58}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶59}** In this case, Jones argues that his trial counsel was ineffective for failing to object to the all-white jury pool as not being representative of a "fair cross section" of the community. "The Sixth Amendment to the United States Constitution guarantees 'the right to a speedy and public trial, by an impartial jury.'" *State v. Johnson*, 2013-Ohio-1286, ¶ 32 (11th Dist.), quoting *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). "The Sixth Amendment guarantee to a jury trial 'contemplates a jury drawn from a fair cross section of the community.'" *State v. Elmore*, 2005-Ohio-5940, ¶ 55 (5th Dist.), quoting *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). However, "[a] criminal defendant has no affirmative right to a jury of a particular racial, gender or age composition." *Id.* at ¶ 56.

**{¶60}** To establish a violation of fair-cross-section requirement,

"a defendant must prove: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process."

*Johnson* at ¶ 33, quoting *State v. Fulton*, 57 Ohio St.3d 120 (1991), paragraph two of the syllabus.

**{¶61}** Based on our review of the record, we conclude that Jones failed to demonstrate that his trial counsel was ineffective in this case. Critically, Jones failed to meet his burden of demonstrating how his argument would have had a reasonable

probability of success. In particular, Jones did not present any evidence reflecting a "deliberate exclusion of 'distinctive groups' of the jury venire or jury panel involved." *Elmore* at ¶ 61. That is, Jones did not present any evidence as to the percentage of black Americans in Van Wert County or any evidence that black Americans are systematically excluded in Van Wert County. *Compare State v. Purvis-Mitchell*, 2018-Ohio-4032, ¶ 77 (4th Dist.) (resolving that Purvis-Mitchell did not present "any evidence as to the percentage of African-Americans in Washington County" or "any evidence that African-Americans are systematically excluded in Washington County"). *See also Elmore* at ¶ 57. Instead, Jones "relies solely upon conclusory allegations." *Purvis-Mitchell* at ¶ 77. Consequently, we conclude that Jones's trial counsel was not ineffective for failing to object to the jury pool.

{¶62} Thus, Jones's fourth assignment of error is overruled.

**Fifth Assignment of Error**

**Was appellant's motion for new trial properly denied where the alleged victim, J.M., could not identify him and where trial counsel for appellant failed to subpoena medical professionals to attest to the impossibility of appellant committing the conduct?**

{¶63} In his fifth assignment of error, Jones argues that the trial court erred by denying his motion for a new trial. Specifically, Jones contends that he should have been granted a new trial because J.M. "could not identify [him]" and because his "trial counsel failed to subpoena medical professionals to attest to the

impossibility of [him] committing the crimes due to his debilitating back condition and surgery." (Appellant's Brief at 24).

*Standard of Review*

**{¶64}** "The decision of whether to grant a new trial pursuant to Crim.R. 33 rests within the sound discretion of the trial court." *State v. Bradley*, 2018-Ohio-3005, ¶ 6 (3d Dist.). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶65}** Motions for new trial are governed by Crim.R. 33(A), which provides, in relevant part, that a trial court may grant a new trial if there is an "[i]rregularity in the proceedings . . . because of which the defendant was prevented from having a fair trial" or when "the verdict is contrary to law." Crim.R. 33(A)(1), (4). *See State v. Lei*, 2006-Ohio-2608, ¶ 25 (10th Dist.) ("A claim of ineffective assistance of counsel is cognizable in a motion for a new trial pursuant to Crim.R. 33(A)(1)."). "A new trial should not be granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule or was thereby prevented from having a fair trial." *State v. Sanders*, 2010-Ohio-3433, ¶ 18 (10th Dist.).

**{¶66}** Here, Jones contends that the trial court should have granted him a new trial because the jury's verdict was contrary to law since J.M. could not identify him as the person who committed the crimes at issue in this case and because his

trial counsel's failure to present expert testimony regarding Jones's medical condition prevented him from having a fair trial. However, even though Jones's request for a new trial was timely, the trial court did not abuse its discretion by denying Jones's motions for a new trial. To begin with, based on our resolution of Jones's first assignment of error, Jones's argument that the jury's verdict is contrary to law since J.M. "was unable to say it was [Jones] who committed any crime against him," is without merit. (Appellant's Brief at 24). *See State v. Deanda*, 2021-Ohio-3774, ¶ 27 (6th Dist.).

{¶67} Moreover, Jones's ineffective-assistance-of-counsel argument raised under his motion for a new trial is untenable. Again, "[t]o establish a claim for ineffective assistance of counsel, a defendant must show that [his trial] counsel's performance was deficient and that [his trial] counsel's deficient performance prejudiced him." *State v. G.F.*, 2019-Ohio-3673, ¶ 30 (10th Dist.). Generally, "'the failure to call a witness to testify ordinarily is a matter of trial strategy that will not be second-guessed by a reviewing court.'" *Beavercreek v. LeValley*, 2007-Ohio-2105, ¶ 21 (2d Dist.), quoting *State v. Mills*, 2004-Ohio-267, ¶ 8 (2d Dist.).

{¶68} In this case, Jones's trial counsel's decision not to present expert testimony regarding Jones's medical condition was not only within the realm of reasonable trial strategy but Jones cannot demonstrate that he was prejudiced by his trial counsel's failure to present such testimony. *See id.* at ¶ 22. Indeed, the jury heard Destiny Upshaw's ("Upshaw"), Jones's girlfriend, testimony that Jones

underwent a back-fusion surgery on February 6, 2022 and that "he was in pain walking," which "limited him a lot" on the date of the incident at issue in this case, February 1, 2022. (Aug. 7-8, 2022 Tr., Vol. III, at 421). Importantly, the jury was able to compare Upshaw's testimony to the balance of the State's evidence presented at trial and the jury choose to credit the State's evidence over Upshaw's testimony. *See State v. Voll*, 2012-Ohio-3900, ¶ 27 (3d Dist.). Consequently, Jones cannot demonstrate that the outcome of his trial would have been different had his trial counsel presented expert testimony regarding his medical condition.

**{¶69}** For these reasons, we conclude that the trial court did not abuse its discretion by denying Jones's motion for a new trial.

**{¶70}** Jones's fifth assignment of error is overruled.

**{¶71}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**